#### FOR THE COUNTY OF

# YORK.

## *APRIL TERM.*

## 1827.

*Memorandum.* The Chief Justice was not present at this term.

## BRADBURY *vs.* WHITE.

In a bill in chancery, seeking the specific performance of a written contract, the party sought to be charged may shew by parol, that by reason of fraud, surprise or mistake, it does not truly exhibit what was agreed between the parties.

Where one being about to purchase a lot of land, agreed with the owner of the adjoining lot that if he completed the purchase he would let him " have thirty feet always to be kept open adjoining his house;" and the house stood ten feet from the line of the lot about to be purchased ;—it was holden that the party was entitled to a conveyance of a strip of land thirty feet wide, measuring from the line of the lot, and not from the house, and extending back to the rear of the lot ; and to as large an estate in the easement, as the other had it in his power to grant.

THIS was a bill in equity for the specific performance of a special contract in writing, of the following tenor;—"It is agreed between Mr. *Chrisp Bradbury* and myself, that if I purchase some land of the heirs of *Cyrus King* Esq. at auction next Monday, that said *Bradbury* shall have thirty feet always to be kept open, adjoining to said *Bradbury's* house, on the north-westerly side of his house, at a fair and equitable price, according to what I may purchase at. *Biddeford, August 13, 1833. Samuel*

*White, Chrisp Bradbury.*" The land alluded to was bounded northerly by a lane leading to *Saco* river, westerly by the county road, southerly by land of the plaintiff, and easterly by low water mark ; and it was purchased by the defendant at a guardian's sale, as intimated in the agreement. The house of the defendant stood about ten feet from the line of the land purchased ; and his outbuildings extended back to a log or capsill at high water mark. The plaintiff in his bill claimed to have thirty feet in width, measuring from the line of the defendant's land, and extending from the front of the lot, to low water mark.

The defendant, in his answer, admitted the agreement, but insisted that the conversation between them related only to a passage way, extending thirty feet from the plaintiff's house, and running back only to the capsill at high water mark, for a convenient approach to the plaintiff's buildings ; and that in the memorandum, which was written in haste at the moment, without advice of counsel, this material part was accidentally omitted. The agreement, thus understood, the defendant alleged he was willing to perform.

Parol testimony was taken, on both sides, to the situation of the land, and to various conversations and declarations of the parties, shewing their understanding of the contract ; the material parts of which are noticed in the opinion of the court.

*E. Shepley*, for the plaintiff, contended that the agreement was in itself free from doubt ; and it shewed that the plaintiff was to have thirty feet in width, of whatever land the defendant should purchase ; for it was about this land that they treated. And it was to extend as far back as the land itself might extend. There was no other limitation.

He insisted that parol evidence was inadmissible to alter or control the terms of the contract. The rule on this subject is the same in equity as at law. The exceptions, allowed in equity, are addressed wholly to the discretion of the court ; and go no farther than to admit the party to shew accident, or omission of a material part of the contract, or want of equity on the side of the plaintiff. *Bridges v. Dutchess of Chandos* 2 *Ves.* 422, and the cases there cited. *Hunt v. Rousmanier* 8 *Wheat.* 211. *Dwight v. Pomeroy* 17 *Mass.* 303.

*Greenleaf*, for the defendant, argued that the written agreement was void for uncertainty. It did not appear, by the writing, whether the plaintiff was to have a piece thirty feet square, or a strip of that width;—nor, if the latter, whether it was to extend to the rear of the house only, or to high water mark, or, still farther, to low water mark ;—nor whether the width was to be measured from the plaintiff's own house, or from the line of the purchased lot. Neither did it appear whether the title to be conveyed to the plaintiff was a fee, or a life estate, or a perpetual right of way ; nor by what rule the price was to be ascertained, if the value of the two sides of the lot was unequal. It being thus uncertain, and the terms not being so precise but that either party might innocently and reasonably misunderstand them, equity will not run the hazard of doing injustice by a specific decree; but will leave the party to his remedy for damages at law. 1 *Mad. Chan.* 426, 427. *Lindsay v. Linch* 3 *Sch. & Lefr.* 7. *Colson v. Thompson* 2 *Wheat.* 337, 341. *Blake's Chan.* 7. *Harnett v. Yielding* 2 *Sch. & Lefr.* 555, 556, 567. *Ld. Walpole v. Ld. Orford* 3 *Ves. jr.* 419. *Bromley v. Jeffries* 2 *Vern.* 415. *Emery v. Wase* 5 *Ves.* 849. *Brodie v. St. Paul* 1 *Ves.* 326. *Newland on Contr.* 151.

Parol testimony, it is agreed, is inadmissible to reform the writing, or aid its defects, so as to lay the foundation for a specific decree; but it is equally clear that the defendant may prove, by parol, any circumstances shewing it inequitable to decree the specific execution of a written contract ; though such mode of proof is not open to the plaintiff. 1 *Mad. Chan.* 405, 406.

Other points were raised and discussed, on both sides, upon the evidence, at the argument, which was had *April* term 1826. The opinion of the court was delivered at this term by

WESTON J. The plaintiff, by a bill in equity, seeks the specific performance of an agreement in writing set forth in the bill, upon certain considerations averred ; stating further that he has been and still is ready to perform what the agreement requires on his part ; and praying that the court would decree that the defendant should make execute and deliver a deed to the plain-

tiff, conveying thirty feet of land bought by the defendant, according to the written agreement.

The defendant, in his answer, admits the written agreement set forth in the bill; he admits also a sufficient consideration therefor. He avers, however, that in a conversation between him and the plaintiff, in which the plaintiff "expressed his desire to obtain the use of a passage way upon a part of the [*King*] land, extending in width thirty feet from the front corner of the plaintiff's house, which house they supposed to stand about ten feet from the line of the land aforesaid, and running back from the road on which said land fronts, to a certain log in the bank, at high water mark, and no further, for the express and only purpose of giving to the plaintiff a more convenient approach to his house, and the outbuildings thereto belonging, by widening the plaintiff's passage way from ten to thirty feet ; but so as to take but twenty feet in width of the land, then about to be purchased by this defendant ; to which this defendant assented." And he further states, that " there was at no time any conversation between them, relative to said land, and previous to said time of sale, of an import in any wise other than, or contrary to the conversation aforesaid, and that in pursuance of said conversation, and with the sole intent to carry the same into effect, the paper writing aforesaid was hastily drawn up and signed by said parties, without the aid or advice of counsel learned in the law; and in which a material part, to wit the extent of said passage, was omitted to be inserted."

Testimony has been taken on both sides, in pursuance of commissions, issuing from this court, and in answer to interrogatories and cross interrogatories propounded by the parties. The counsel for the plaintiff objects to a part of the testimony elicited by the defendant ; and the counsel for the defendant objects to the parol explanations and the verbal agreement, which appears in the testimony on the part of the plaintiff.

It cannot be necessary to cite authorities to prove that, at common law, parol testimony is inadmissible to add to, vary, or contradict written evidence. And the rules of evidence are the same in courts of law and of equity. Therefore parol evidence, which goes to alter a written agreement, cannot be received in

a court of equity, any more than in a court of law.    *Clinan v.
Cooke* 1 *Sch. & Lef.* 38, 39, and the cases there cited.    *Marquis
of Townsend v. Stangroom*, 6 *Ves.* 328.    *Woollam v. Hearn*, 7. *Ves.*
211.    *Higginson v. Claves* 15 *Ves.* 516.    *Moran v. Hays* 1 *John.*
*Ch. Rep.* 343.

But when equity is called upon to exercise its peculiar juris-
diction, by decreeing a specific performance, *the party to be charg-*
*ed* is to be let in to show that, by fraud, mistake, or surprise, the
written contract does not contain the terms really agreed.    *Wool-*
*lam v. Hearn, Townsend v. Stangroom* and *Clinan v. Cooke*, before
cited.    *Clarke v. Grant*, 14 *Ves.* 519.    And this being done to
the satisfaction of the court, the plaintiff will not be entitled to
a decree for specific performance.    If the plaintiff, therefore,
in the case before us, is entitled to the relief he seeks, it must
be upon the written contract as it stands.    The defendant, how-
ever, may be permitted to show that, by reason of fraud, sur-
prise, or mistake, it does not truly exhibit what was agreed
between the parties.

The defendant resists the decree prayed for, upon several
grounds;—viz. that the contract is too vague and uncertain in its
terms, to justify a decree for specific performance ;—that it does
not, upon a sound construction, embrace so much of the *King*
land, as is contended for by the plaintiff ; and, lastly, that how-
ever that may be, it ought not to be enforced, because, by mis-
take or inadvertency, there is an omission of a material part of
what was really agreed.

The bill avers, and the answer admits, that the piece of land,
formerly the property of *Cyrus King*, deceased, purchased by
the defendant, is bounded on the road leading from *Saco* falls to
Winter Harbor, and extends thence to *Saco* river, between ferry-
lane on the north, and the land of the plaintiff on the south.    The
extent of what he is to have north of his house is given in the
written agreement ; in the other direction, towards *Saco* river,
it is not given ; but it was to be a part of the *King* land ; and
as there are no restrictive words, it must be understood to extend
as far as that land extended, namely, to the river.    There was
no intermediate point given or implied, as a boundary ; and with-

out giving it this construction, it must be held to be void for uncertainty; which is not to be done, if the intention of the parties can be collected, by any fair implication. The piece, from which the plaintiff's part was to be severed, was understood. His part is expressly limited to a certain number of feet in one direction; in the other, it is not limited; it must then be commensurate with the piece itself.

It is said that the quantity of interest intended, whether for life or in fee, is uncertain. But *King* owned the estate in fee; that interest the guardian sold to the defendant; and the plaintiff was to participate in the purchase. He is entitled, therefore, to as large an estate in the easement, as the defendant received, and had it in his power to grant, which is an estate in fee.

A more difficult question is presented in respect to the width of the piece, which the plaintiff was to have. If the passage way, of thirty feet to be kept open, is to adjoin the house, as stated in the agreement, it would require but twenty feet of the *King* land; to which it should be limited, according to the construction contended for by the defendant. But notwithstanding this part of the description, connected with the fact, that the north side of the plaintiff's house is ten feet south of the line of the *King* land, a majority of the court are of opinion that the agreement fairly implies, that the plaintiff was to have thirty feet of that land. That land was the subject matter of the agreement. The plaintiff was to have a part of it. He was to receive it from the defendant. It was to be of that part which was northerly of the plaintiff's house; and he was to have thirty feet at a fair and equitable price, the amount of the whole purchase indicating the scale of value, by which it was to be estimated. That which was to be estimated was the thirty feet; and it was what the plaintiff was to have, not what he possessed. Indeed no one reading the agreement, without reference to any extraneous fact, could doubt that the number of feet stated was intended to be taken from that, which the defendant designed to purchase. But that land in fact not adjoining the plaintiff's house, he cannot have the stated quantity located, so as to correspond in every particular with the description given. Rejecting the words in

Bradbury *v.* White.

the agreement, "adjoining said *Bradbury's* house," the land to be conveyed may be understood and located ; and the object, which the parties manifestly had in view, the one to convey, and the other to receive, a certain and definite part of the contemplated purchase, may be carried into effect. If these words are retained, and regarded as the leading and essential part of the description, the defendant could convey no land, which would adjoin the plaintiff's house ; and if one third of the passage way was to be furnished by him, the quantity which he would receive of the defendant, to be estimated upon the principles stated, would be a different one from that specified in the agreement. These words therefore may be disregarded, as they are not essential to ascertain the estate to be conveyed, and as they are inconsistent with other parts of the description, which indicate, with more certainty, the general intent of the parties. The case of *Worthington v. Hylyer, 4 Mass.* 196, may be cited as justifying this construction.

If the defendant made the purchase, that part which he was to reserve to himself, would adjoin the contemplated passage way on the south. It was to be kept open, and would be for their joint benefit and accommodation ; but if it was to consist in part of land, which the plaintiff before owned, no interest in that part could be secured to the defendant, in the conveyance to be by him made to the plaintiff; and it does not appear, either from the agreement, or the consideration proved on the part of the plaintiff, that he was to execute any instrument to the defendant. The consideration was, that the plaintiff would forbear to interfere, by bidding at the sale, and would pay, for the part he was to have, a fair proportion of what might be given for the whole.

It remains to determine, whether there was any such mistake in the agreement, as is set forth in the answer. It is there stated that the plaintiff wanted only twenty feet of the *King* land, and that it was this quantity alone, which the defendant consented that he might have. From an examination of the testimony, it appears that this suggestion is not only unsupported by proof, but that it is expressly disproved. Some of the witnesses depose that the plaintiff said he wanted the land for a road or passage

way, or principally for a passage way, but none of them say that it was to take twenty feet only of the *King* land, or thirty feet from the house. On the contrary, *Jacob Bridges* deposes that the defendant told the plaintiff he should have as much as he wanted, and that the plaintiff replied he wanted thirty feet from his line. *Elias Bradbury* deposes that the same conversation took place between the parties, when the agreement was signed. *Daniel Goodwin* also testifies to a similar conversation.

It is further stated in the answer, that it was agreed between the parties, that the plaintiff should go no further than to a certain log in the bank, at high water mark. Upon this point *Noah H. Tibbits* deposes that on the morning of the sale, he heard the plaintiff tell the defendant that he wanted only to go to the high water mark. *Samuel Floyd* and *Levi Floyd* testify that, after the sale, it was agreed between the parties, that the plaintiff should run, the one says to the corner, and the other to the capsill, of the plaintiff's wharf. *Samuel Floyd* also states, that it was agreed that *Fairfield* should make the survey ; and *Bridges* says that when *Fairfield* came for that purpose, the plaintiff appeared to be satisfied with what he supposed to be the defendant's offer; until *Fairfield* either shewed the defendant's proposition to the plaintiff on paper, or explained it to him, when he said he expected to go to low water mark, and thought that was the understanding between them ; but the defendant directing the surveyor to run only to high water mark, the plaintiff refused to acquiesce in this construction of the agreement. *Charles Adams* deposes that subsequent to the purchase, he heard a conversation between the parties, in which the word capsill was introduced, as he thinks by both, but he does not recollect what the conversation was.

Other witnesses testify, that the plaintiff claimed to low water mark. *Bridges* deposes that prior to the sale, he heard the plaintiff say he wanted the water privilege, as much as the upland. *Daniel Goodwin* says that in a conversation, which took place between the parties in his presence, the defendant tried to induce the plaintiff to consent not to go to low water mark, but to the end of his wharf only, and he would make a deduction from the

Bradbury *v.* White.

price; but that the plaintiff refused, and said he wanted what they had agreed for. The witness adds that the defendant did not at that time pretend to deny that, by the agreement, the plaintiff was to go to low water mark ; but said that thirty feet in width, and to the end of the wharf, was as much as the plaintiff could want.

The answer, being directly disproved in a material part, cannot be regarded as having much weight in verifying the facts stated in it; and the proof offered to show that the plaintiff agreed to stop at high water mark, repelled as it is by counter proof on his part, is far from being satisfactory.

In the case of *Townsend v. Stangroom*, before cited, *Ld. Eldon*, although he admitted evidence of surprise, in defence to a bill seeking a performance in specie, remarked that they who produce evidence of mistake or surprise in opposition to a specific performance, undertake a case of great difficulty.

*Upon the whole, although it is be regretted that the written* agreement is not more explicit in its terms, a majority of the court, are of opinion that the points taken in defence have not been sustained ; and that the plaintiff is entitled to the relief sought in the bill.