No. 32,329

Orville Mills, Jr., *Appellee*, v. Celia Mills Purdy et al.,
*Appellants*.

(45 P. 2d 1049)

Opinion filed
June 8, 1935.

*J. N. Tincher, L. F. Cushenberry,* both of Hutchinson, *Riley W. MacGregor,* and *Herbert Hobble, Jr.,* both of Medicine Lodge, for the appellants.

*Samuel Griffin, O. M. Wheat, J. Raymond Eggleston,* all of Medicine Lodge, and *Donald Muir,* of Anthony, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to compel specific performance of a contract for the conveyance of land. Judgment was for the plaintiff, striking the answer of defendants from the files. The defendants appeal.

O. Mills died on December 20, 1932. At his death he owned about 4,000 acres of Barber county land. He left surviving him his widow, Lora Mills, Orville Mills, Jr., and W. C. Mills, sons, and Celia Mills Purdy, Elizabeth M. Elliott, Ethyl M. Ward and Mary M. Lake, all daughters. In his will O. Mills left one half of his real estate to his wife and the other one half to Celia Mills Purdy. He left the other children one dollar each. Some time prior to his death Mills had executed an instrument by which he had conveyed all his personal property to the daughter, Ethyl Ward. Orville Mills, Jr., was beneficiary in a life insurance policy in the amount of $1,570 on his father's life. He had also received some cash from his father during his lifetime.

About January 1, 1933, all the children and their mother met and arrived at an agreement in the nature of a family settlement. In this agreement Celia Mills Purdy agreed to transfer to the other children an undivided one sixth interest in the real estate she had received under the will. Ethyl M. Ward agreed to transfer to the

estate the personal property she had received before her father's death. W. C. Mills, Elizabeth M. Elliott, Mary M. Lake and Orville Mills agreed to transfer to the estate all the property they had received during the last year of the life of Mills. In addition, Orville Mills agreed to transfer to the estate the proceeds of the life insurance policy that has been referred to, amounting to $1,570. It was agreed that Orville should prepare the necessary instruments. He did prepare two such instruments. One of these is the contract that is sued on in this action. It provided that Celia Mills Purdy agreed to convey to the other five children an undivided one sixth interest in the one half of the real property she had received by the will of her father within a reasonable time after the will of her father was probated. The other children agreed not to contest the will. The contract was signed by the six children. This action was instituted by Orville Mills, Jr. He named as defendant his sister, Celia Mills Purdy.

The petition set out the father's will and alleged that by its terms Mrs. Purdy became the owner in fee simple of an undivided one half of the real estate.

The petition then referred to the written contract that has already been described. It alleged that it was made for the purpose of making an equal division of the estate of O. Mills.

The petition then alleged that the defendant had not performed the contract, although plaintiff had not contested the will of the father.

The prayer of the petition was for an order directing specific performance of the contract to convey lands.

Celia Mills Purdy moved the court that her mother, Lora Mills, and the brothers and sisters be made parties defendant. This motion was allowed.

The defendants then filed an answer setting out the family agreement, to which reference has been made. Time after time vital parts were stricken from the answer, and permission to file an amended one was granted. Finally an amended answer was filed that contained allegations about as they have been given here. In addition this amended answer alleged that the true consideration for the agreement was the family settlement which was not mentioned in the written contract sued on, and that the plaintiff fraudulently failed to insert the true consideration, which was the money he derived from the estate by way of the insurance policy in the written agreement.

The answer alleged there was a specific collateral agreement by the plaintiff that he would refund the money to the estate that he had received on the insurance policy for the benefit of the plaintiff and all the defendants and that when this was carried out plaintiff would be entitled to one twelfth of the real estate referred to in the petition.

The answer further alleged that defendants were not experienced in drawing contracts—that plaintiff was, and they relied on the plaintiff to embody all that was necessary in the agreement carrying out the family settlement; that if it is necessary for this agreement to contain the true and full consideration the defendants asked that the contract be reformed to embody this collateral agreement; that the plaintiff had not paid the sum of $1,570 to the defendants or to the estate of O. Mills and that he was, therefore, not entitled to the relief prayed for until he did do so.

The answer further alleged that the contract sued on by the plaintiff stated no consideration as it thus stood.

The answer prayed that plaintiff take nothing and that the agreement sued on be reformed to properly state the facts.

On motion of the plaintiff this answer was stricken from the files because the allegations in it were immaterial and did not constitute a defense to the action. The appeal is from that order. It amounts to sustaining a demurrer to the answer.

The theory of the plaintiff is that the answer is not good because in order to prove it the defendants would be compelled to violate the rule that oral evidence cannot be used to change or vary the terms of a written instrument. The rule relied on is stated in *Brown v. Trust Co.*, 71 Kan. 134, 80 Pac. 37. It is as follows:

". . . an unambiguous written contract . . . completed, is supposed to embody all prior understandings and negotiations, and is not to be enlarged, varied, or contradicted by parol testimony." (Syl. ¶ 1.)

The petition in this case pleads that the contract sued on was given for the purpose of carrying into effect a family settlement.

The answer that was stricken sets out facts from which we must conclude that not all the matters that had to do with the family settlement were included in the contract sued on.

The theory upon which family settlements are upheld is that they tend to prevent litigation between heirs which is so often wasteful and which engenders such bitter feeling between people who should have a tender regard for each other. The desire that family har-

mony should not be destroyed by an unequal distribution provided by will has been held sufficient consideration to support a family settlement. They have been said to be favorites of the law. See *Myers v. Noble,* 141 Kan. 432, 41 P. 2d 1021.

The trouble with plaintiff's position is, first, that defendants do not seek to contradict or vary any of the terms of the written contract, and second, that plaintiff wants to eat his cake and have it too. He desires to get the benefits of a family settlement without carrying out the part that is a burden. The remedy of compelling the performance of a contract for the conveyance of real estate is an equitable one. In the enforcement of it a court seeks to do equity.

This court has considered this question in *Fowler v. Marshall,* 29 Kan. 665. This court said:

"Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when, upon all the facts, it is equitable it should be done.

"He who asks specific performance should show the facts which make such a decree equitable; and a failure to do this justifies a refusal of the decree." (Syl. ¶¶ 1, 2.)

In *Burkhalter v. Jones,* 32 Kan. 5, 3 Pac. 559, this court said:

"While in legal contemplation, two persons may make a contract that would be enforced at law, yet if it should seem probable from the facts of the case that the parties did not in fact and in equity agree to the same thing, the supposed contract would not be decreed in equity to be enforced specifically."

In *Bird v. Logan,* 35 Kan. 228, 10 Pac. 564, this court said:

"A contract will be specifically enforced only where its specific enforcement is equitable; and generally, only where the plaintiff has in equity and good conscience a right to demand its specific enforcement; and generally, where a contract is itself inequitable, and where the defendant has been misled by the plaintiff or his agent into executing it, the contract will not be specifically enforced." (Syl. ¶ 2.)

See, also, *Young v. Schwint,* 108 Kan. 425, 195 Pac. 614, and authorities there cited.

If the allegations of the answer are true a more flagrant case of inequity can hardly be imagined.

The plaintiff meets the arguments of defendant with the statement that no matter how courts favor family settlements such a holding does not abrogate the parol evidence rule.

Specific performance of a contract will not be decreed where it appears that the plaintiff in equity and good conscience is not entitled to such relief. This can only be determined by an examina-

tion of the surrounding facts and circumstances. The only way these may be examined is by hearing parol evidence. Testimony cannot be received when the pleading which it seeks to prove is stricken from the files.

*Quinn v. Roath,* 37 Conn. 16, was a suit for specific performance of a contract for the sale of real estate. The respondent offered evidence of a parol contract which altered somewhat the terms of the written contract. This evidence was rejected by the trial court. The decision was reversed. The court said:

"Another reason might well have been urged why upon principle this evidence should not have been rejected. While no pretense of fraud is made in connection with the drafting or executing of the writing, yet proceeding upon the respondent's claim which he desired an opportunity to prove, and in regard to which we cannot say he would not have been successful, the effort by the petitioner to enforce only the written, and entirely disregard and avoid the verbal, provisions, of the contract, was an attempt to compel the respondent to perform a different agreement from what was in fact made, and one which in consequence of the variation, and the petitioner's subsequent default with respect to it, was void. Such an attempt if made was unfair and unconscientious. It was an effort to make an unjust and fraudulent use of the written part of the contract, which might properly have been resisted by the introduction of the offered evidence." (p. 31.)

*Bradbury v. White,* 4 Maine 391, was an action to compel specific performance of a contract for the sale of real estate. Parol evidence was offered. The court recognized the rule against receiving parol evidence to alter a written contract, but said:

"But when equity is called upon to exercise its peculiar jurisdiction, by decreeing a specific performance, the party to be charged is to be let in to show that, by fraud, mistake, or surprise, the written contract does not contain the terms really agreed. (*Woollam v. Hearn, Townsend v. Stangroom,* and *Clinan v. Cooke,* before cited; *Clark v. Grant,* 14 Ves. 519.) And this being done to the satisfaction of the court, the plaintiff will not be entitled to a decree for specific performance. If the plaintiff, therefore, in the case before us, is entitled to the relief he seeks, it must be upon the written contract as it stands. The defendant, however, may be permitted to show that, by reason of fraud, surprise, or mistake, it does not truly exhibit what was agreed between the parties." (p. 395.)

In *Berry v. Whitney,* 40 Mich. 65, the court held:

"Fraudulent representations as to the legal effect of an instrument will avoid it, even if made to one who has actually read it, if unable to judge of its true construction. But the fraud must be contemporaneous with the execution of the instrument and must consist in obtaining the assent of the party defrauded, by inducing a false impression as to its legal or literal nature and operation." (Syl. ¶ 3.)

In *Dwight v. Pomeroy and Al.*, 17 Mass. 303, the court held:

"In short, there are but two cases in which parol evidence can be admitted to control the operation of the legal provisions in a deed or written contract, in itself complete and intelligible. One is the case of fraud, of which the injured party may avail himself in a court of law, as well as in a court of equity; and the other is, where a party applies to a court of equity to enforce a written contract, and the adverse party is allowed to show, by testimony, that the instrument relied upon does not contain the true agreement of the parties, or the whole of it. If this latter case, the court of equity will withhold the exercise of its power, unless the party seeking relief will do full justice to the other party, according to the facts which are made to appear to the court." (p. 328.)

See, also, *Herron v. Rich*, 95 N. C. 500; also, *Electric R'y Co. v. Curtis*, 154 Mo. 10; *Averett, Trustee, and Als. v. Lipscombe*, 76 Va. 404.

These authorities are recognized by the American Law Institute, which published the following rule:

"Agreements prior to or contemporaneous with an integration are admissible in evidence.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(d) to prove facts in a suit for specific performance showing such mistake, oppression or unfairness as affords ground for denying that remedy." (Restatement, Contracts, § 238.)

The question of the parol evidence rule was discussed in the case of *Griesa v. Thomas*, 99 Kan. 335, 161 Pac. 670. That action was on a written contract for the purchase of catalpa seedlings. The purchaser who had been sued showed certain fraudulent misrepresentations. The admission of these was attacked under the parol evidence rule. The court said:

"However dogmatically the rule is stated and reiterated in the decisions and textbooks that parol evidence is inadmissible to show the oral representations, negotiations and statements of contracting parties, leading up to their bargain, when later their contract is reduced to writing and signed by them, an invariable qualification of that rule is usually appended making an exception in all cases of fraud pleaded and proved." (p. 339.)

See, also, *Logan v. Collinson*, 114 Kan. 620, 220 Pac. 291; *Boxer v. Watchorn Oil & Gas Co.*, 120 Kan. 278, 243 Pac. 316.

In this case the answer sufficiently alleges fraud on the part of the plaintiff in inducing his sister to sign the contract sued on when it did not cover all the family settlement. It is also plain that the contract sought to be enforced is not the entire contract of the parties. We hold that the defendants had a right to prove the

allegations of their answer and that if they are proved it is an answer to the relief sought in the action by plaintiff.

The judgment of the trial court is reversed with directions to proceed in accordance with the views expressed herein.