No. 38,362 and No. 38,363 Consolidated

CHARLES A. MEAIRS, as Executor of the Estate of Minnie Kruckenberg, Deceased, et al., *Appellees,* v. WALTER KRUCKENBERG, *Appellant.*

CHARLES A. MEAIRS, as Executor of the Estate of Minnie Kruckenberg, Deceased, et al., *Appellees,* v. THEODORE KRUCKENBERG, *Appellant.*

(233 P. 2d 472)

Opinion filed July 3, 1951.

*Paul R. Wunsch,* of Kingman, argued the cause, and *Charles H. Stewart,* also of Kingman, was with him on the briefs for the appellants.

*Charles C. Calkin,* of Kingman, argued the cause and was on the briefs for appellee Charles A. Meairs, Executor.

*S. S. Alexander,* of Kingman, argued the cause and was on the briefs for Esther Kuehn and Clara Wiske, appellees.

*S. S. Alexander*, of Kingman, argued the cause and was on the briefs pro se as guardian *ad litem*.

The opinion of the court was delivered by

Wertz, J.: The questions presented in this appeal concern the validity of the delivery of two deeds during the lifetime of the grantor and the trial court's interpretation of certain reservations contained in each of said deeds.

The facts may be stated as follows: Minnie Kruckenberg was a resident of Kingman County, Kansas, and owned certain real estate located in Kingman County. On June 19, 1946, she had prepared two warranty deeds, the grantee in one deed being her son Walter, and the grantee in the other her son Theodore. The two clauses pertinent here were identical in the two deeds. The granting clause in each deed, with the exception of the legal description of the real estate conveyed reads:

"Witnesseth, That said party of the first part . . . does . . . grant, bargain, sell and convey unto said party of the second part, his heirs and assigns, all the following-described real estate . . . . . . . . . . . . . . . . . . . [description] . . . . . . . . . . .

"*Except, however, grantor reserves all right, title and control of said real estate as long as she* shall live.

"To Have and to Hold the Same, Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, forever.

"And said Party of the first part for herself, her heirs, executors or administrators, does hereby covenant, promise and agree, to and with said party of the second part, that at the delivery of these presents she is lawfully seized in her own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances, of what nature or kind soever; *except life estate as above set out,* and that she will warrant and forever defend the same unto said party of the second part, his heirs and assigns, against said party of the first part, her heirs, and all and every person or persons whomsoever, lawfully claiming or to claim the same."

The italicized words in the reservation and warranty clauses were no part of the printed deed form, but were inserted therein by typewriter at grantor's request.

On June 19, 1946, Mrs. Kruckenberg went to the Isabel State Bank, conversed with Charles Meairs, cashier, and left the two above mentioned deeds at the Isabel State Bank with instructions

to deliver them to *no one* until her death and then deliver the same to her *sons* Walter and Theodore. Subsequent to leaving these deeds with the bank and a short time before her death, she again advised Mr. Meairs, the cashier, to deliver these deeds to her two sons upon her death. She also had a conversation with her brother in which she advised him of the making of the deeds, where they were deposited, and that they were to be delivered to her two sons upon her death, and that the sons were to receive title to these respective pieces of property by virtue of such deeds. The two deeds remained at the Isabel State Bank until the death of Minnie Kruckenberg, which occurred in June of 1950. They were thereupon turned over to the respective grantees and by them recorded in the register of deeds' office in Kingman County, and each of the grantees is now claiming to be the absolute owner of the real estate described in his deed and entitled to the full possession thereof.

Minnie Kruckenberg on September 9, 1946, made and executed a last will and testament, paragraphs four and five of which purported to make certain dispositions of the same real estate as conveyed by the warranty deeds above referred to. After decedent Minnie Kruckenberg's death, and on the 26th day of July, 1950, her last will and testament was admitted to probate in the probate court of Kingman County, Kansas. Charles A. Meairs, the cashier of the Isabel State Bank, was appointed as executor of her will and qualified as such. He inventoried the real estate covered by the two deeds here in question as a part of the decedent's estate and then filed in the district court of Kingman County two actions, one against Walter Kruckenberg and wife, being case no. 38,362 in this court, and the other against Theodore Kruckenberg and wife, being case no. 38,363 in this court, in which he as executor asked to have the deeds to the respective grantees set aside and title quieted to all of such real estate in the executor.

Prior to institution of such suits the executor, through his attorney, filed an application in the probate court proceedings to have S. S. Alexander appointed as guardian *ad litem* for the children of Walter Kruckenberg and Theodore Kruckenberg, and as trustee for their unborn heirs. At the time he filed this application, there was nothing pending in the probate court of concern to the minor heirs. On the same day the application was filed, an order was made by the probate court appointing S. S. Alexander as such guardian *ad litem* and trustee. Soon thereafter Mr. Alexander ap-

peared before the probate court and filed an application asking that he be permitted to join with the executor in the prosecution of the case against Walter Kruckenberg and an order was made on the same day making such appointment. At the time of filing the suit, being case no. 38,362, S. S. Alexander as guardian *ad litem* and as trustee for unborn and unascertained beneficiaries purported to join as a plaintiff.

In the respective petitions filed in the district court, plaintiffs alleged there was no valid delivery of the deeds in question and that the deeds were testamentary in character. To these petitions each of the defendants filed an answer alleging that he claimed title to the real estate described in the respective deeds by virtue of those deeds, that there was a valid delivery of the deed in each case, that it was not testamentary in character, and that the deed had been executed and delivered in accordance with law, and was a valid conveyance of the real estate. In the Walter Kruckenberg case, defendant also contended that S. S. Alexander as guardian *ad litem* and as trustees for certain unascertained beneficiaries had no authority or right to maintain the action or to join as a plaintiff in the prosecution thereof.

These cases were consolidated for the purpose of trial and the district court found that there had been a valid delivery of the deeds in question but that they were testamentary in character and therefore void. The district court also found that S. S. Alexander had no authority to join as a party plaintiff in the action in the district court, and dismissed the action as to him.

An appeal was perfected by Walter Kruckenberg and Theodore Kruckenberg from the decisions and rulings made by the lower court adverse to them. It is their contention the court erred in its finding that the deeds were testamentary in character.

Two questions are presented: (1) Were the two deeds executed by the grantor delivered in her lifetime; and (2) Were the instruments, in form warranty deeds, testamentary in character, or did they convey a present interest?

As to the first question, we concur in the lower court's finding of an unconditional delivery of the two deeds during the lifetime of Mrs. Kruckenberg, and a review of the record discloses ample evidence to support the court's conclusion in this regard, including testimony of appellant's witnesses. The court's finding, so supported by evidence, will not be disturbed on appeal.

This brings us to the second and important question: Were the deeds testamentary in character, or did they convey a present title? At the outset it will be noted that the two deeds in question are general warranty deeds regularly executed and delivered by the grantor in her lifetime. Our primary object is to interpret these written instruments in order to ascertain and effectuate the intention of the grantor at the time of their execution and delivery. In pursuance of this problem, it is necessary for us to draw upon the accepted modern rules of construction. Although a certain degree of formality is associated with deeds of real estate, technical expressions of established meaning are generally employed to describe the interest to be created thereby. These are not essential; they are but guideposts to assist in the search for the true intention of the parties which must ultimately control. (26 C J S 320; 16 Am. Jur. 540, 541). We have said the intention of the grantor as expressed in a deed is controlling and must be gathered from the four corners of the instrument. (*Howe v. Howe,* 94 Kan. 67, 145 Pac. 873). Under this rule permitting and requiring a survey of the whole instrument by the court, we said in *Nolan v. Otney,* 75 Kan. 311, 313, 89 Pac. 690:

". . . The real intent of the grantor being the object of our search, the inquiry is, not what do his words mean in strict legal contemplation, but in what sense did he use them—what idea did he employ them to convey. The decisions are not in harmony on the subject, but a well-defined tendency clearly appears in the more recent cases to uphold the deed if possible, and if necessary to that end to regard it as speaking with colloquial freedom rather than with formal accuracy."

In construing the deeds in the instant case, it will be noted that after expressly granting and conveying the premises, the grantor reserves "all right, title and control of said real estate as long as she shall live" and in the warranty clause grantor warrants title and includes the statement "except life estate as above set out".

It will be observed that grantor does not undertake to reserve all that is granted, but only an estate for life, in the land conveyed. Reading the deed in its entirety, it amounts to nothing more than a conveyance in fee simple to the grantee with a limitation that the title thus conveyed in praesenti goes encumbered with a life estate in the grantor. (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567). In the somewhat similar case of *Brady v. Fuller,* 78 Kan. 448, 96 Pac. 854, we stated:

"An instrument in the form of a deed, duly acknowledged and recorded, which in express terms does 'grant, bargain, and sell, convey and confirm' land to a grantee, and which reserves from the land conveyed a life-estate in the grantor, and, following this reservation, contains another giving the grantor power 'to mortgage, encumber, sell, lease, convey or otherwise dispose of said real estate', and which, in the habendum clause, also contains a recital and condition that if 'the said party of the second part shall die before the death of the said party of the first part then and in that event the estate hereby conveyed shall revert to and vest in the said party of the first part just as if this deed had not been made', is not testamentary in character, but is a deed conveying a present title to the grantee, subject to a life-estate in the grantor; and it is further held that the reservation in the grantor of power to mortgage, encumber, sell, lease or convey the real estate refers to the control and disposition of the reserved life estate."

When the grantor in employing the language used in the deeds in the instant case reserved all right, title and control as long as she lived and warranted title except as to her life estate mentioned, we are constrained to hold that the word "title" as employed in the limitation means the right to possession during her lifetime. She may have feared that the usual language employed to convey a life estate meant a mere occupancy only and so to put her right beyond doubt, she made an express reservation giving her power to lease, encumber, sell or dispose of her reserved life estate by making an express reservation of right, title and control as long as she lived. It cannot be said that such reservation in any manner had reference to the fee simple estate which passed to the grantees upon her delivery of the deeds to the bank as related.

After an extensive review of the authorities it appears that the trend of modern decisions is to uphold such an instrument as a deed although it may contain words suggestive of the idea that it is not to take effect until a later date. The general rule is best stated in 16 Am. Jur. 550, § 198:

"In a few cases instruments in the form of deeds which contain reservations of the right, title and interest during the maker's life have been construed in order to ascertain whether they are deeds or wills. Such instruments have been consistently held to be deeds, rather than wills, and not reservations of the title in fee, but mere reservations of the use of the property during the lifetime of the maker. Thus, an instrument in the form of a deed reciting consideration, containing the usual words of grant and warranty, and providing that the maker reserves to himself his right to the property during his life, after which the grantee is to have it in fee simple, is a deed. An instrument drafted in the form of a deed, declared in the body thereof to be a deed, and attested as a deed does not become a will by the inclusion therein of a clause wherein the maker reserves title in the described land for and during his nat-

ural life and provides that at his death the deed is to be a fee simple title to the grantees, because such an instrument is construed as passing title in praesenti with the right of possession postponed until the maker's death."

Following the general rule stated, attention is invited to the note in 11 A. L. R. beginning at page 67; the note in 76 A. L. R. beginning at page 646; 8 R. C. L. 1095; Thompson on Real Property, Vol. 4, pages 387, 388; *Yordy v. Yordy,* 169 Kan. 211, 217 P. 2d 912; *Leach v. Pratt,* 30 Tenn. App. 330, 205 S. W. 2d 970; *Noffsinger v. Noffsinger,* 303 Ky. 344, 197 S. W. 2d 785.

It is next contended that the trial court erred in holding that the guardian ad litem appointed by the probate court for certain minor heirs had no authority to join with the executor as a party plaintiff in a separate and distinct action brought in the district court for the purpose of setting aside the deeds in question. G. S. 1949, 59-2205 provides:

"The petition of a person under legal disability shall be by his guardian or next friend. When it is by his next friend the court may substitute the guardian, or any person, as the next friend. The court may appoint a guardian ad litem in any probate proceeding to represent and defend a party thereto under legal disability."

It is noted that the statute specifically provides that a petition of a person under legal disability shall be by his guardian or next friend and not by a guardian *ad litem.* A guardian *ad litem* may be appointed in any proceeding in the probate court to represent and defend the party under disability. This is applicable only after the proceedings have been filed by a proper party in an action where the minor may be interested. We find no provision in the probate code which grants authority to the probate court to appoint a guardian *ad litem* for the purpose of maintaining an action for the recovery of property in the district court.

Our code of civil procedure, G. S. 1949, 60-406, provides the only method by which a suit can be instituted on behalf of a minor. The statute says that the action must be brought by his guardian or next friend, and this does not include guardians *ad litem.* Ballantine's law dictionary defines a guardian *ad litem* to be a person appointed by a court to look after the interests of an infant when his property is involved in litigation. He manages the defense of an infant defendant where there is no parent or guardian.

From an examination of the guardian's brief, we find no authorities cited sustaining his contention as to the right of a guardian *ad litem* appointed by the probate court to join with the executor in

this district court action and our limited search has revealed none.

In view of what has been said, it necessarily follows that the portion of the judgment of the lower court finding that the deeds in question were unconditionally delivered by the grantor in her lifetime and that the guardian ad litem had no authority to join as a party plaintiff in the action should be affirmed, and that portion thereof cancelling the deeds in question should be set aside with directions to render a judgment holding the deeds when executed and delivered conveyed a fee simple title to defendants subject only to a life estate in the grantor.

It is so ordered.