(890 P.2d 744)
No. 71,790

In the Matter of the Estate of FRANK E. WISE, Deceased.

Opin-
ion filed March 3, 1995.

*Dennis D. Depew*, of Depew Law Firm, of Neodesha, for appellant.

*Gaylord I. Maples*, of Wichita, for appellee.

Before ROYSE, P.J., LARSON, J., and JOHN J. BUKATY, JR., District Judge, assigned.

ROYSE, J.: Sally Pokorny, as guardian ad litem for Viola Dill, entered into a family settlement agreement with Mary Wise (Wise) to divide the estate of Frank E. Wise, deceased. Wise filed a motion asking the district court to approve the family settlement agreement but the court refused. Wise appeals, arguing the district court erred (1) in concluding the executor had standing to object to the agreement and (2) in holding that the guardian ad litem lacked authority to enter into a family settlement agreement.

The parties have stipulated to the facts. Frank E. Wise executed his will in 1984. He left his entire estate to his wife, Annaleise Wise. The will provided that if Annaleise predeceased Frank, then the entire estate would go to Viola Dill, Frank's mother-in-law. The will named Viola's son, Kenneth Dill, as executor of the estate if Annaleise predeceased Frank.

Annaleise died in 1985. Frank and Mary Wise were married in 1987. Frank did not revise his will before he died in 1992. Kenneth Dill filed a petition for probate of the will and asked to be appointed executor. The district court granted those requests. Pursuant to the executor's motion, the district court declared Viola Dill to be an "incapacitated person" and appointed Pokorny to serve as her guardian ad litem. Wise filed an election to take by intestate succession.

Wise and Pokorny, as guardian ad litem for Viola Dill, entered into a Family Settlement Agreement (Agreement). Wise agreed to give up her claimed interest in certain IRA accounts, and, in return, Viola Dill would give up her claim to a one-half interest in the homestead. Wise filed a motion asking the district court to approve the Agreement as fair and equitable. Pokorny, as

guardian ad litem for Viola Dill, joined in the motion. Kenneth Dill, as executor, filed a brief opposing the Agreement.

Based on the briefs submitted by the parties, the district court ruled (1) Kenneth Dill, as executor, had standing to object to the Agreement and (2) Pokorny, as guardian ad litem, did not have the authority to enter into a family settlement agreement for Viola Dill. The district court concluded that it did not need to determine whether the Agreement was fair.

Before examining the issues on appeal, we note that family settlement agreements are "favorites of the law." The mutual promises of the contracting parties provide sufficient consideration for the agreement. *In re Estate of Harper*, 202 Kan. 150, Syl. ¶ 4, 446 P.2d 738 (1968). To be valid, a family settlement agreement must be in writing and acknowledged and approved by "all heirs, devisees and legatees, and all other interested or affected persons, all of whom must be competent or authorized to enter into such agreement." K.S.A. 59-102(8). A family settlement agreement must be submitted to and approved by the district court in order to obtain a decree of final settlement and an assignment of the real estate in accord with its provisions. K.S.A. 59-2249; *Brent v. McDonald*, 180 Kan. 142, 152, 300 P.2d 396 (1956).

The first issue on appeal is whether Kenneth Dill, as executor, had standing to object to the Agreement. The district court decided this issue as a matter of law, based on stipulated facts. Appellate review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Standing is a question of whether a party has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155 (1987). "Standing to sue" means that a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 629, 802 P.2d 1231 (1990); *cf. State v. Wickliffe*, 16 Kan. App. 2d 424, 429, 826 P.2d 522 (1992) (standing to challenge the validity of a

search limited to those whose own Fourth Amendment rights have been violated).

Kenneth Dill does not claim that he has a stake, either personally or as executor, in the outcome of the controversy. He does not claim that he possesses any interest that will be affected by the district court's decision to approve or disapprove the Agreement. Instead, Kenneth Dill relies on a standing-by-necessity argument. He reasons that, as executor, he is a personal representative of all the heirs, devisees, legatees, and creditors, and he therefore has a duty to protect Viola Dill's interests. He contends there was no other person to protect Viola Dill's interests. This argument is not persuasive.

One problem with Kenneth Dill's argument is that his premise is incorrect. Kansas appellate decisions have emphasized that an executor's duty is not to represent any individual who may be interested in the estate, but to act in the best interests of the estate. See *In re Estate of Lohse v. Rubow*, 207 Kan. 36, 40, 483 P.2d 1048 (1971). An executor's duty is to the estate, not to the heirs or legatees of the estate. *In re Tax Appeal of Estate of Kerschen*, 13 Kan. App. 2d 370, Syl. ¶ 4, 771 P.2d 74 (1989); see *In re Estate of Stahl*, 226 Kan. 48, 54, 596 P.2d 121 (1979).

An examination of the circumstances of this case reveals why Kenneth Dill's premise is unworkable. While claiming to represent the interests of Viola Dill, a devisee, the executor has opposed the claimed interests of Wise, an heir. Kenneth Dill's position, which preferred one interested party over another, is not consistent with his claim that he is a personal representative of all persons who have an interest in the estate.

The Kansas Supreme Court has previously ruled that an executor may not take sides in a dispute regarding distribution of an estate. The case of *In re Estate of Benso*, 165 Kan. 709, 710, 199 P.2d 523 (1948), involved a controversy between the widow of the decedent and his children by a former marriage. The children claimed that an antenuptial agreement limited the property the widow could receive from the estate. The widow claimed the antenuptial agreement had been destroyed, and she was entitled to receive a one-half interest in the estate. The executor filed an

answer, claiming the antenuptial agreement was in effect and should control the distribution of the estate. When the district court ruled in favor of the widow, the executor filed an appeal.

The widow filed a motion to dismiss the executor's appeal, which the Supreme Court granted. The court observed that by filing the answer in the lower court, the executor "took one side of a controversy that concerned him not at all." 165 Kan. at 711. The court quoted from 2 Am. Jur., Appeal and Error § 183, pp. 960-61:

> " 'An executor or administrator, as such, is not, however, aggrieved or prejudiced by a decree or judgment as to the rights of the beneficiaries, and therefore, cannot appeal from a decree affecting their interests. In accordance with this rule, it is held that an administrator is not entitled to appeal from a decree of distribution.' " 165 Kan. at 711.

Applying that general rule, the court concluded:

> "The administrator's statement in his final report of the respective claims of the parties was proper. It was improper for him later to take sides. He is not concerned with the contest between heirs which they litigate at their own expense and on their own behalf. His appeal, therefore, is dismissed." 165 Kan. at 711.

See *In re Waterman*, 212 Kan. 826, 834, 512 P.2d 466 (1973).

Under the rule adopted in *Benso*, an executor cannot become an advocate for one side in a controversy over distribution of an estate. If that is true, then an executor cannot assume the role of an advocate to initiate such a controversy.

The case of *In re Estate of Harper*, 202 Kan. 150, is instructive, even though it arose out of a somewhat different procedural setting. In *Harper*, the heirs objected to admission of the will to probate on the grounds that all parties interested in the estate had already entered into a family settlement agreement. One of the executor's responses to that objection was to contend the family settlement agreement was ineffective because it was not signed by the executor. The court rejected the executor's contention, holding that an effective family settlement agreement does not require an executor's approval:

> "We note the appellee's contention that it was an interested party in the estate and since it did not sign the Harper family settlement agreements to withhold

the will from probate, the agreement was ineffective and was not binding upon the executor named in the will. The point is not well taken. The nomination of an executor is a part of the decedent's will. [Citation omitted.] Unlike an heir at law, a devisee, a legatee, or a creditor of the decedent, the [executor] had no pecuniary interest in the distribution of the estate of which it was deprived by the family settlement agreement. The fact that it was nominated as executor and had the right and duty to petition for probate of the will, and would be compensated when appointed, gave it no such pecuniary interest. Its interest in the estate after appointment as executor, aside from its duty to faithfully serve as such fiduciary, was for reasonable compensation only in return for services rendered. [Citation omitted.]" 202 Kan. at 160-61.

The *Harper* decision, then, indicates that an executor has no stake in the distribution of the estate and thus has no stake in the existence or content of a family settlement agreement.

Kenneth Dill's contention that he is the only person to protect Viola Dill's interests is wrong. That contention ignores the fact that he had sought and obtained the appointment of a guardian ad litem for Viola Dill. The district court order appointing Pokorny as guardian ad litem directed her to "represent and defend" Viola Dill throughout administration of the estate. That contention also ignores the fact that every family settlement agreement must be submitted to and approved by the district court. *Harper*, 202 Kan. at 160; *Brent*, 180 Kan. at 152; *In re Estate of Hinshaw*, 164 Kan. 550, 561, 190 P.2d 386 (1948).

In summary, Kenneth Dill, as executor, did not have an interest in the Agreement. Moreover, nothing in this case requires adoption of his standing-by-necessity theory. The district court, therefore, erred in concluding that Kenneth Dill had standing to object to the Agreement.

The second issue on appeal is whether a guardian ad litem may enter into a family settlement agreement. This issue is one of first impression.

The probate code authorizes the district court to "appoint a guardian *ad litem* in any probate proceeding to represent and defend a party thereto under legal disability." K.S.A. 59-2205. In this case, the district court reasoned that authority to "represent and defend" is not authority to enter into contracts. The district court's interpretation of a statute is a conclusion of law subject

to unlimited review on appeal. *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986).

Commentators who have examined K.S.A. 59-2205 describe the duties of a guardian ad litem in broad terms. One authority noted that a guardian ad litem "acquires no right to the property or any duty except to legally protect the minor or incompetent's interest in the proceeding in which he is appointed." 2 Moreau, Volz & Thomas, Kansas Practice Methods: Guardianship § 1153 (1957). Another writer detailed the nature of a guardian ad litem's duties:

"When a guardian ad litem is appointed, he has duties to perform and they are not perfunctory duties. He should examine the file or otherwise acquaint himself with the situation, and, without being unduly contentious, he should do whatever may be necessary or proper to protect the rights and interests of his ward. He should be as careful as the court from which he receives his appointment not to do anything, or allow anything to be done, to the prejudice of his ward's rights and interests. It is the duty of the court to see that such rights and interests are protected, and this is one method the law affords to assist the court in the performance of this duty." 3 Bartlett's Kansas Probate Law and Practice § 1173 (rev. ed. 1953).

We note that Bartlett's 1964 supplement includes a citation to *Hodges v. Phoenix Mutual Life Ins. Co.,* 174 Kan. 282, 288, 255 P.2d 627 (1953), for the proposition that a guardian ad litem should take such steps as will call the court's attention to the circumstances then existing to the end that the ward's rights will be protected.

Finally, "Ballantine's law dictionary defines a guardian *ad litem* to be a person appointed by a court to look after the interests of an infant when his property is involved in litigation." *In re Estate of Kruckenberg,* 171 Kan. 450, 456, 233 P.2d 472 (1951).

Kenneth Dill has not presented any justification for excluding from the scope of a guardian ad litem's authority the pursuit of a settlement beneficial to the ward. Recognizing that family settlement agreements are "favorites of the law," *Harper,* 202 Kan. 150, Syl. ¶ 4, it seems illogical to deprive an incompetent person of the benefit of such an agreement. See, *e.g., Muenzenmayer v. Luke,* 161 Kan. 597, 170 P.2d 637 (1946) (settlement recommended by guardian ad litem to resolve action to cancel contract approved as fair, equitable, and in the best interests of the ward).

We also consider pertinent our recent holding that an attorney's duty to exercise reasonable care and diligence in the handling of cases he undertakes may, under the facts of a particular case, include the duty to pursue a settlement. *McConwell v. FMG of Kansas City, Inc.*, 18 Kan. App. 2d 839, 847, 861 P.2d 830 (1993), *rev. denied* 254 Kan. 1007 (1994). No justification has been offered for us to conclude that different duties would apply to an attorney who serves as a guardian ad litem.

Kenneth Dill's argument that a guardian ad litem should not be allowed to bind a ward misses the point. Pokorny never purported to bind Viola Dill to the Agreement. Instead, she joined with Mary Wise in seeking court approval of the Agreement, just as she was required to do. *Harper*, 202 Kan at 160. See also *Miotk v. Rudy*, 4 Kan. App. 2d 296, 301, 605 P.2d 587, *rev. denied* 227 Kan. 927 (1980) (an attorney does not acquire the implied authority to compromise and settle a client's case merely by being employed).

On appeal, both parties cite *In re Estate of Kruckenberg*, 171 Kan. 450. In that case, the court appointed a guardian ad litem to represent minor children in the administration of an estate. The guardian ad litem then joined with the executor in bringing an action to quiet title in the district court. The Supreme Court held the guardian ad litem appointed by the probate court had no authority to join as a plaintiff in a separate and distinct action in the district court. 171 Kan. at 457.

Kenneth Dill admits that *Kruckenberg* is not on point. He nonetheless argues that if a guardian ad litem cannot file a petition, then it can reasonably be assumed that a guardian ad litem cannot pursue a family settlement agreement. His assumption ignores the rationale for the *Kruckenberg* holding.

In *Kruckenberg*, the Supreme Court examined G.S. 1949, 59-2205 (now K.S.A. 59-2205) and G.S. 1949, 60-406 (now K.S.A. 60-217[c]). Those statutes stated that an action on behalf of a minor must be brought by his guardian or next friend. Those statutes did not then authorize such an action to be brought by guardians ad litem. In addition, 59-2205 authorized the appointment of a guardian ad litem in any proceeding in the probate

court. The Supreme Court found that there was no provision in the probate code that gave the probate court authority to appoint a guardian ad litem for the purpose of maintaining an action in the district court.

In short, the *Kruckenberg* decision relies on the fact that there was no statutory authorization for a guardian ad litem to pursue a separate proceeding. In contrast, this case does not involve a separate, independent lawsuit; we are concerned here with the guardian ad litem's role in the probate proceeding. *Kruckenberg* does not purport to limit a guardian ad litem in the representation of a ward in a probate proceeding.

In light of the fact that minors and incapacitated persons are treated similarly as persons under legal disability, see K.S.A. 60-217(c) and K.S.A. 60-508(a), it is instructive to examine the rules regarding settlements in cases involving minors. In probate cases involving minors, the courts use guardians ad litem to protect the minors' interests in family settlement agreements:

"If a family settlement is to be binding on minors, the parties must apply for court approval. The court will appoint a guardian ad litem to represent the minors and must be satisfied that their interests are promoted by the settlement.

"It has been said that where the court is satisfied that the contract promotes and secures the rights of the minor, it is not only the right but the duty of the court to uphold and enforce the settlement, especially where it settles a family dispute." 31 Am. Jur. 2d, Executors and Administrators § 84, p. 80.

The Kansas Supreme Court, in *Railway Co. v. Lasca*, 79 Kan. 311, 99 Pac. 616 (1909), long ago adopted similar requirements for the settlement of a minor's tort claim. When the minor plaintiff was 18 months old, his hands were run over by the wheel of a railroad car, resulting in severe injuries. His parents settled his claim against the railway company for $100, and the settlement was approved by the district court. Later, a second suit was brought to set aside the judgment that had been entered on the basis of the settlement. The district court ordered the judgment set aside, and the Supreme Court affirmed:

"A parent has no implied authority to compromise or settle a minor's cause of action. [Citation omitted.] Nor has a parent authority to consent that a judgment be rendered against his infant child, and when admitted to prosecute or defend as a next friend or guardian *ad litem* he can not by admissions or stip-

ulations surrender the substantial rights of the infant. [Citation omitted.] The next friend, being entrusted with the rights of the infant so far as they are involved in the cause, and acting under responsibility to the court and to the infant, may negotiate for a fair adjustment of the controversy. [Citation omitted.] He may not, however, bind the infant by such settlement; it can only become effective when given due judicial sanction [citation omitted], and this must be upon a real and not a perfunctory hearing." 79 Kan. at 316-17.

The Supreme Court in *Railway Co.* concluded the district court initially approved the settlement agreement simply because the parents had consented to the agreement and were satisfied with it. The district court, however, had not "judicially examine[d] the facts to determine whether the agreement was reasonable and proper." The district court's duty to protect the interests of the minor required that it determine whether the agreement was in the child's best interests. 79 Kan. at 318.

The rules adopted in *Railway Co.* were recently cited with approval in *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988).

These authorities indicate a guardian ad litem may enter into a settlement agreement on behalf of a minor child, subject to court approval. There is no reason to apply a different rule in the case of a guardian ad litem for an incapacitated person. Pokorny, as guardian ad litem, properly entered into the Agreement on behalf of Viola Dill and submitted the Agreement for court approval. The district court erred in holding that the Agreement was void.

On appeal, Kenneth Dill urges that Viola Dill was found by the district court to be incapacitated but that she was not incompetent. This argument ignores the fact that the district court found Viola Dill to be both incapacitated and incompetent.

The parties have urged this court to decide the fairness question. Whether the Agreement was fair to the parties at the time it was submitted to the district court, and whether it promoted and secured the rights of Viola Dill, are questions of fact. These are matters for the district court to decide in the first instance, not an appellate court. See *Bartlett & Co., Grain v. Curry*, 1 Kan. App. 2d 242, 249, 563 P.2d 1096 (1977).

The decision of the district court is reversed, and the case is remanded for further proceedings in accord with this opinion.

Reversed and remanded.