NOT DESIGNATED FOR PUBLICATION

No. 120,022

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEAN KATHERINE CASSITY-HAUCK,
as Executrix of David Lee Hauck,
*Appellee*,

v.

FRANK C. HAUCK II, Individually and as Successor Trustee of the
Jo Ann Hauck Revocable Trust,
and
NATHAN HAUCK,
*Appellants*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed April 5, 2019. Affirmed.

*Nels P. Noel*, of Concordia, for appellants.

*J. Nick Puckett*, of Hampton & Royce, L.C., of Salina, and *Scott R. Condray*, of Condray & Thompson, LLC, of Concordia, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM: Frank C. Hauck II and Nathan Hauck appeal the district court's grant of summary judgment to Jean Katherine Cassity-Hauck on the parties' cross-motions for summary judgment in a quiet title action.

1

After Frank and Nathan's grandmother, Jo Ann Hauck, died, Frank and Nathan entered into a Family Settlement Agreement with their father, David Hauck, to amicably divide their grandmother's trust. They claim this agreement intended for their father to deed to them certain real property upon his death. However, the agreement made no mention of this understanding. David later died and left a Will devising all residences and real property to his wife, Jean.

A dispute arose between David's widow and his sons as to who should be the proper owner of this real estate. Ultimately, the district court granted Jean's motion for summary judgment. On appeal, Frank and David argue the district court erred in denying their motion for summary judgment and in refusing to consider the parol evidence because (1) the Family Settlement Agreement ambiguously defined the consideration and (2) the parties to the Family Settlement Agreement entered into the written agreement under the mutual mistake that the agreement reflected David's promise to convey the real property to Frank and Nathan upon his death.

For reasons we more fully explain below, we agree with the district court that the Family Settlement Agreement unambiguously failed to convey any real property to Frank and Nathan upon David's death and that the district court properly refused to consider parol evidence seeking to establish a contrary understanding. We also find that Frank and Nathan failed to properly preserve their claim of mutual mistake. Thus, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The issues on appeal concern the ownership of real property located in Cloud County, Kansas, with the following undisputed facts developed on the parties' cross-motions for summary judgment.

2

Jo Ann Hauck created the Jo Ann Hauck Revocable Trust, dated May 26, 1994 (Trust), and funded the Trust corpus, in part, by transferring the following real property into the Trust:

"1.    The North Half of the Northeast Quarter (N/2 NE/4) of Section Twenty-seven (27), Township Eight (8) South, Range One (1) West of the 6th P.M. EXCEPT a tract beginning at the northwest corner of the Northeast Quarter of the Northeast Quarter (NE/4 NE/4); thence South Fourteen (14) rods; thence East Eighteen (18) rods; thence North Fourteen (14) rods; thence West Eighteen (18) rods, to the place of beginning.

"2.    A tract of land described as follows: Beginning at the northwest corner of the Northeast Quarter of the Northeast Quarter (NE/4 NE/4) of Section Twenty-seven (27), Township Eight (8) South, Range One (1) West of the 6th P.M., thence south Fourteen (14) rods; thence east Eighteen (18) rods; thence north Fourteen (14) rods; thence west Eighteen (18) rods to the place of beginning."

Jo Ann was the Trustee and the Grantor, and the Trust identified David L. Hauck as her only child, with Frank and Nathan—David's sons—as her grandchildren. Upon Jo Ann's death, David would be appointed Successor Trustee and the Trust would continue for a period of time as needed to administer the estate and trust. The Trust named Frank as Successor or Substitute Trustee if David failed to qualify or ceased to act as Trustee. The Trust directed that upon Jo Ann's death,

"all property held in this Trust . . . herein referred to as Grantor's residuary estate, shall be held in Trust or disposed of as follows:

1.    All of the residuary estate to Grantor's son, David L. Hauck, if he survives.

2.    If Grantor's son, David L. Hauck, does not survive, the residuary estate shall be divided into two equal shares with one share given to grantor's grandson, Frank C. Hauck, II, and one share given to grantor's grandson, Nathan J. Hauck."

3

On July 22, 2016, Jo Ann passed away. Upon Jo Ann's death, the real property was titled to and held in the Trust. Jo Ann had several CDs totaling $95,637.34 that named David, Frank, and Nathan as her payable-on-death beneficiaries. David assumed the role of Successor Trustee.

On August 5, 2016, David, Frank, and Nathan entered into a Family Settlement Agreement "in order to amicably settle the matters set out in this Agreement and to avoid costly litigation." The agreement identified David, Frank, and Nathan as all the beneficiaries under the Trust. The Family Settlement Agreement described Jo Ann's estate at the time of her death, in part, as consisting of farm real estate including a residence, owned by the Trust, numerous checking and savings accounts, as well as CDs at First Bank of Hope, Miltonvale, Kansas, and Bennington State Bank, Bennington, Kansas. The parties acknowledged receiving adequate information of Jo Ann's assets at her death to make an informed decision about signing the Family Settlement Agreement.

The parties also agreed that Jo Ann's CDs naming David, Frank, and Nathan as payable-on-death beneficiaries would be distributed solely to David "as an agreeable distribution of estate assets, including the payment of bills and expenses owed" by Jo Ann's estate. The Family Settlement Agreement also states: "The parties agree and recognize [David] as the Trustee and Beneficiary of the [Trust], and assets derived from the certificates of deposit will be used to take care of business and expenses in tending to, and administering the trust in regard to farm ground and a residence in the trust."

As required by the Family Settlement Agreement, Frank and Nathan transferred their shares of the CDs to David in the form of cashier's checks on August 5, 2016, in a total amount of $63,758.22. Days later, David opened and deposited the checks into a joint savings account with his spouse Jean, who is David's surviving wife and not Frank and Nathan's mother. Jean was not a party to the Family Settlement Agreement.

4

In November 2017, David passed away survived by Jean, Frank, and Nathan. Upon David's death, the above real property remained titled and held in the Trust. Prior to his death, David executed a Will, naming Jean as the executrix. The parties do not dispute that, in relevant part, the Will stated:

> "I give, devise and bequeath my principal residence located at 38 Mesa Court, Bailey, CO 80421, or such other residence that is my principal residence at the time of my death, to my wife, if she survives me. . . . I also give, devise and bequeath any other residence or real property I may own at the time of my death to my wife, if she survives me."

David also devised "the balance of my residuary to my wife, if she survives me. If she fails to survive me, I give, devise and bequeath the balance of my residuary estate to my children Nathan J. Hauck and Frank C. Hauck II in equal shares."

Individually and as executrix of David's Will, Jean subsequently filed an action to quiet title in her name of the following real property: The North Half of the Northeast Quarter (N/2 NE/4) of Section Twenty-seven (27), Township Eight (8) South, Range One (1) West of the 6th P.M., Cloud County, Kansas. Jean identified Frank and Nathan as defendants and stated the record title was in the name of the Trust. Jean argued, however, that the Trust intended the real property to be distributed to David upon Jo Ann's death, and because David became the sole beneficiary and trustee upon Jo Ann's death, he became the legal and equitable owner of the property under the merger doctrine before his death.

Frank and Nathan answered and counterclaimed, first denying that the merger doctrine applied and arguing that they entered into the Family Settlement Agreement with David intending their transfer of the CDs to be in exchange for David's promise to convey the real property held in the Trust to Frank and Nathan upon his death. In relevant part, Frank and Nathan argued in their counterclaim that:

5

"31. But for the promise that they would get the Real Estate upon their father's death, Defendants would not have signed over their interests in the various CDs.

"32. But for the promise that they would get the Real [Es]tate upon their father's death, there was no consideration for Defendants to have signed over their interests in the various CDs."

Frank and Nathan claimed David spoke with an attorney about conveying the real property to them upon his death.

The parties subsequently filed cross-motions of summary judgment. From the cross-motions, it was undisputed that David became the legal and equitable owner of the real property held in the Trust at the time of Jo Ann's death.

Jean argued the district court should grant summary judgment and quiet title of the property in her name because (1) the merger doctrine applied; (2) David's oral promise to convey the real property to Frank and Nathan was barred as parol evidence because the Family Settlement Agreement had no ambiguity and contained no such promise; (3) the Statute of Frauds barred the oral agreement as a conveyance of real property; and (4) David could not convey the property without her consent because they began occupying and made the property their primary residence and homestead on July 23, 2016. Jean argued Frank and Nathan also could not rely on David's oral promise because his statements are inadmissible hearsay evidence. In response to Jean's Statute of Frauds argument, Frank and Nathan stated: "The Family Settlement Agreement was in writing, it did induce Defendants to collectively sign over $63,758.22, and parol evidence should be permitted to explain the full terms of the agreement."

In their motion for summary judgment, Frank and Nathan argued that because David bargained for and agreed in the Family Settlement Agreement to convey the real property to Frank and Nathan upon his death in exchange for their shares of the CDs, the

6

district court should grant summary judgment and convey the real property to them or, alternatively, to the Trust. Frank and Nathan stated the Family Settlement Agreement was ambiguous because it set forth no consideration for the transfer of their shares of the CDs to David.

Frank and Nathan presented and relied on their own affidavits and an affidavit from attorney Justin L. Ferrell. Frank and Nathan attested that they signed the Family Settlement Agreement and agreed to the CD transfers based on David's promise to convey the real property to them at his death. Frank and Nathan attested that at the time of the CD transfers in August 2016, David still lived in Colorado with Jean.

Ferrell attested to assisting David with his duties as Trustee in wrapping up the Trust and preparing the Family Settlement Agreement. Ferrell stated that he prepared the Family Settlement Agreement with the understanding that David and his sons had agreed that Frank and Nathan would sign over their shares of the CDs to David in exchange for David agreeing to convey the real property to Frank and Nathan upon David's death. Ferrell stated the Family Settlement Agreement was hurriedly prepared and his office neglected to include the parties' agreement regarding the real property owned and held in the Trust. Ferrell also stated that he spoke with David about preparing a new trust for the real property conveyance but did not complete it because of David's outstanding legal bill. Ferrell attested he believed David was still living in Colorado when Frank and Nathan transferred the CDs because he corresponded with David at his Colorado address.

In their affidavits, the brothers claimed that the Family Settlement Agreement was put together hurriedly and the provision about the remainder interest in the real estate was inadvertently left out of the written document. Frank and Nathan's motion for summary judgment claims that the crux of the agreement between them and their father was that they were to receive a remainder interest in the real estate in exchange for conveying all of the cash they were otherwise entitled to receive. According to the brothers, Jean

7

needed to come forward with evidence contesting these material facts to preclude summary judgment and she could not state—as she did in her responses to interrogatories—that she did not know the reason for Frank and Nathan's transfers of the CDs to David.

Following the parties' cross-motions for summary judgment, the district court granted summary judgment for Jean and denied Frank and Nathan's motion. The district court refused to consider Frank and Nathan's proffer of parol evidence, holding the Family Settlement Agreement was unambiguous and had adequate consideration. The district court held, without application of the merger doctrine, that David was the sole beneficiary of the Trust at Jo Ann's death and became the owner of the real property. Although the property was owned by the Trust upon David's death, the district court ordered the real property to be conveyed to David's estate and disposed of according to his Will, i.e., to Jean. The district court later entered a journal entry quieting the title to Jean.

Frank and Nathan timely appeal.

DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT FOR JEAN?

On appeal, Frank and Nathan argue the district court erred because (1) the ambiguous Family Settlement Agreement permitted the district court to review the parol evidence of David's agreement to convey to Frank and Nathan the real property and (2) clear and convincing evidence supported the fact that the parties entered the Family Settlement Agreement under a mutual mistake.

In response, Jean argues (1) the district court properly refused to consider Frank and Nathan's parol evidence because the Family Settlement Agreement was unambiguous and adequate consideration supported Frank and Nathan's agreement to transfer their

8

shares of the CDs to David; (2) Frank and Nathan's mutual mistake argument raised for the first time on appeal should not be considered; if the argument is considered, Frank and Nathan cannot prove mutual mistake because David is unavailable to testify and the agreement was not reduced to writing; (3) David could not convey his homestead without Jean's consent; (4) David's oral promise is barred by the Statute of Frauds; and (5) the Family Settlement Agreement cannot control over David's Will.

## A. *Standard of Review for Summary Judgment*

"The mere filing of cross-motions for summary judgment does not obligate a trial court to enter summary judgment. Rather, the trial court must independently determine whether a genuine issue of material fact exists." *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 791, 109 P.3d 1255 (2005); see *Henrickson v. Drotts*, 219 Kan. 435, 438, 548 P.2d 465 (1976).

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

"To the extent 'material facts are uncontroverted, an appellate court reviews summary judgment de novo.'" *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

9

B.      *Standard for Reviewing the Written Instruments*

K.S.A. 2018 Supp. 58a-111 authorizes the use of family settlement agreements with trusts. See English, *The Kansas Uniform Trust Code*, 51 U. Kan. L. Rev. 311, 325 n.107 (2003). When interpreting a trust,

> "the court's primary function is to ascertain the intent of the settlor by reading the trust in its entirety. If the settlor's intent can be ascertained from the express terms of the trust, the court must give effect to those terms unless they are contrary to law or public policy." *Hamel v. Hamel*, 296 Kan. 1060, 1068, 299 P.3d 278 (2013).

"Family settlement agreements are favorites of the law and, when fairly made, are to be given liberal interpretation and should not be disturbed by those who entered into them." *In re Estate of Thompson*, 226 Kan. 437, Syl. ¶ 3, 601 P.2d 1105 (1979).

> "To be valid, a family settlement agreement must be in writing and acknowledged and approved by 'all heirs, devisees and legatees, and all other interested or affected persons, all of whom must be competent or authorized to enter into such agreement.' K.S.A. 59-102(8). A family settlement agreement must be submitted to and approved by the district court in order to obtain a decree of final settlement and an assignment of the real estate in accord with its provisions. K.S.A. 59-2249; *Brent v. McDonald*, 180 Kan. 142, 152, 300 P.2d 396 (1956)." *In re Estate of Wise*, 20 Kan. App. 2d 624, 626, 890 P.2d 744 (1995).

Our Kansas Supreme Court explained:

> "The theory upon which family settlements are upheld is that they tend to prevent litigation between heirs which is so often wasteful and which engenders such bitter feeling between people who should have a tender regard for each other. The desire that family harmony should not be destroyed by an unequal distribution provided by will has been held sufficient consideration to support a family settlement." *Mills v. Purdy*, 142 Kan. 133, 135-36, 45 P.2d 1049 (1935).

10

"The mutual promises of the contracting parties provide sufficient consideration for the agreement." *In re Estate of Wise*, 20 Kan. App. 2d at 626 (citing *In re Estate of Harper*, 202 Kan. 150, Syl. ¶ 4, 446 P.2d 738 [1968]). "Family settlement agreements are contractual in nature." *Wise v. Bailey*, No. 115,583, 2017 WL 2610760, at *4 (Kan. App. 2017) (unpublished opinion).

"The interpretation and legal effect of a written instrument is a matter of law over which [appellate courts] exercise unlimited review." *Hamel*, 296 Kan. at 1068; see *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). When reviewing written instruments,

> "a court ascertains the parties' intent from the four corners of the [written] agreement, construing "'all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision."' When the language of the contract is clear, there is no room for construction or modification of the terms. [Citations omitted.]" *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013).

K.S.A. 58-2201 et seq. governs the transfer of real property. As Jean argues, the Statute of Frauds requires that parties convey the title of real property in writing. See K.S.A. 33-106. The writing typically takes the form of a deed. See K.S.A. 58-2205. As explained by the panel in *Wise*, 2017 WL 2610760, at *4:

> "In order for a contract to legally transfer title to real estate absent a deed, the contract must contain all the essential elements necessary to convey land pursuant to a deed, i.e., the parties must be sufficiently designated and identified, the contract must be based upon ample consideration, the property must be accurately identified by governmental description, the contract must contain operative words of grant, and the instrument must be signed and acknowledged by all the parties. See K.S.A. 58-2203 (setting forth requirements for valid warranty deed); K.S.A. 58-2204 (setting forth requirements for valid quitclaim deed); *Hinchliffe v. Fischer*, 198 Kan. 365, 368, 424 P.2d 581 (1967) ('[I]f a written instrument intending to convey real estate contains words in substance to those of the statute, it is sufficient to convey the property described.'); *Bryant v. Fordyce*,

11

147 Kan. 586, 590, 78 P.2d 32 (1938) (holding that use of technical operative words of conveyance are not necessary; words that express intention to transfer property may be sufficient)."

C.     *Is the Family Settlement Agreement ambiguous in defining the consideration for Frank and Nathan's promise to transfer their shares of the CDs to David?*

According to the record, the undisputed facts are that under the Trust, the real property would transfer to David upon Jo Ann's death, if David survived Jo Ann. Because David survived Jo Ann, David became the legal and equitable owner of the real property at Jo Ann's death. But upon David's death, the record title of the real property was in the Trust's name. As written and signed by David, Frank, and Nathan, the Family Settlement does not contain a conveyance of the real property from David to Frank and Nathan upon David's death.

In the quiet title action and on summary judgment, the parties disputed whether David intended the property to transfer upon his death under his Will to Jean or under the Family Settlement Agreement to Frank and Nathan. David's Will transfers his primary residence and "any other residence or real property I may own at the time of my death to my wife, if she survives me." It is undisputed that Jean is David's surviving spouse. In contrast, Frank and Nathan have argued that Frank, Nathan, and David entered into the Family Settlement Agreement with the intent that Frank and Nathan transferred their shares of Jo Ann's CDs totaling $63,758.22 in exchange for David's agreement to transfer the real property held in the Trust to Frank and Nathan upon his death. Frank and Nathan acknowledge, however, that the Family Settlement Agreement does not contain David's promise because the attorney drafting the agreement inadvertently left it out.

The district court refused to consider the affidavits establishing the alleged promises as barred parol evidence and granted summary judgment to Jean, finding the

12

Family Settlement Agreement was unambiguous and established adequate consideration for Frank and Nathan's promise to convey the CDs to David. As a result, the district court denied Frank and Nathan's claim that the Family Settlement Agreement showed that David promised to convey the real property to them upon his death.

Frank and Nathan argue the district court erred in granting summary judgment for Jean and denying their motion for summary judgment because the Family Settlement Agreement ambiguously or failed to define the consideration for their promise to transfer the CDs to David and, as a result, the district court should have considered such parol evidence.

"An enforceable contract must be supported by consideration. 'The consideration necessary to establish a valid contract, express or implied-in-fact, must be an act, a forbearance, or a return promise, bargained for and given in exchange for the promise.'" *James Colborn Revocable Trust v. Hummon Corp.*, 55 Kan. App. 2d 120, 124, 408 P.3d 987 (2017). For family settlement agreements, "mutual promises of the contracting parties provide sufficient consideration for the agreement." *In re Estate of Wise*, 20 Kan. App. 2d at 626. When a party challenges a written contract as lacking consideration, "'existence of consideration is presumed . . . .' When a contract is in writing and was signed by the parties, as here, lack of consideration is an affirmative defense that must be proved by substantial competent evidence." *James Colborn Revocable Trust*, 55 Kan. App. 2d at 124 (quoting *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858 [1985]).

"It is a general rule that parol evidence may not be introduced to contradict, alter, or vary the terms of a written instrument, but where the contract is silent or ambiguous concerning a vital point incident thereto, parol evidence will be received to aid in its construction." *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992). "A contract is not ambiguous unless two or more meanings can be construed

13

from the contract provisions. If the court finds ambiguity, then it may consider additional information in order to clarify the parties' intent, including the parties' subsequent conduct." *Iron Mound*, 298 Kan. at 418. "Whether an instrument is ambiguous is a matter of law to be decided by the court." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992).

The Family Settlement Agreement does not ambiguously define the consideration Frank and Nathan received for transferring the CDs to David. Within the four corners of the agreement, the parties stated the agreement was entered into to avoid costly litigation and that Jo Ann had ongoing and unpaid expenses related to her assets, funeral and burial expenses, and Trust administration. Under the agreement, David also agreed to pay the legal obligations of Jo Ann and of the Trust, including Jo Ann's recurring utility bills, insurance premiums, real estate taxes, final income taxes, expenses needed to administer the Trust, and costs related to the transfer of assets. As related to Frank and Nathan's transfers of the CDs, the agreement states the income taxes would be reported either by Jo Ann's final income tax or by David personally, with the funds used to take care of business and expenses tending to and administering farm ground and a residence in the Trust. The Family Settlement Agreement states adequate consideration for Frank and Nathan's agreement to transfer the CDs to David. Frank and Nathan have no obligation to report the CDs on their individual income taxes and, arguably, the Family Settlement Agreement, as a whole, was entered into to avoid costly litigation.

Frank and Nathan argue the district court should consider the affidavits as parol evidence establishing David's promise to convey the real property to his sons upon his death because the Family Settlement Agreement ambiguously defined the consideration the brothers received for transferring the CDs to David. According to Frank and Nathan, Jean failed to come forward with evidence to dispute the existence of David's promise to convey the real property at his death in order to preclude summary judgment. After finding no ambiguity existed in the Family Settlement Agreement with regard to

14

consideration, the district court properly refused to review the parol evidence. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206-07, 308 P.3d 1238 (2013) (explaining parol or "extrinsic evidence is only admissible if the four corners of the contract establish an ambiguity"). Because the agreement unambiguously defined and had adequate consideration, Frank and Nathan's argument lacks merit.

D.      *Does clear and convincing evidence support the parties entered the Family Settlement Agreement under a mutual mistake?*

Frank and Nathan also argue that they entered into the Family Settlement Agreement with David under the mutual mistake that David had agreed to convey the real property to his sons upon his death in exchange for their agreement to transfer their shares of the CDs to David. In response, Jean argues we should not consider Frank and Nathan's argument because it is raised for the first time on appeal.

Generally, "issues not raised before the [district] court cannot be raised for the first time on appeal." *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, Syl. ¶ 9, 266 P.3d 516 (2011).

> "'[T]here are several exceptions to the general rule that a new legal theory may not be
> asserted for the first time on appeal, including: (1) the newly asserted theory involves
> only a question of law arising on proved or admitted facts and is finally determinative of
> the case; (2) consideration of the theory is necessary to serve the ends of justice or to
> prevent denial of fundamental rights; and (3) the judgment of the trial court may be
> upheld on appeal despite its reliance on the wrong ground or having assigned a wrong
> reason for its decision.' [Citation omitted.]" *In re Estate of Broderick*, 286 Kan. 1071,
> 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

If an issue raised on appeal was not raised below, the party must explain why the issue is properly before the court under Kansas Supreme Court Rule 6.02(a)(5) (2019

Kan. S. Ct. R. 34). A party who fails to comply with this rule risks a ruling the issue was improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). This rule is now strictly enforced. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

On appeal, Frank and Nathan do not address if the issue was raised in the district court. From a review of the record, Frank and Nathan never clearly argued that the district court should reform the Family Settlement Agreement because the parties' mutual mistake caused the written agreement to lack the full terms of the parties' intended, actual agreement. As a result, Frank and Nathan raise the issue for the first time on appeal yet provide no explanation in either of their briefs addressing why the issue is properly before us. Accordingly, we must find the issue waived or abandoned. See *Godfrey*, 301 Kan. at 1044.

In addition, Frank and Nathan did not clearly state mutual mistake nor did they request reformation of the Family Settlement Agreement as an affirmative defense to Jean's quiet title action. However, we recognize that Frank and Nathan may have relied on the mutual mistake theory below without expressly referencing the term. On appeal, Frank and Nathan also do not argue the district court erred in refusing to consider the affidavits as parol evidence in granting summary judgment for Jean because of Frank, Nathan, and David's mutual mistake in the Family Settlement Agreement. Instead, Frank and Nathan argue we should find that clear and convincing evidence establishes the parties entered and signed the Family Settlement Agreement under a mutual mistake.

Generally, in order to raise fraud or mistake as a defense, the party must plead the circumstances constituting the fraud or mistake with particularity. K.S.A. 2018 Supp. 60-209(b). "In an action either legal or equitable in nature brought on a written instrument, either party is at liberty, under proper pleadings, to prove mistake and to have reformation of the contract." *Geiger v. Hansen*, 214 Kan. 83, Syl. ¶ 3, 519 P.2d 699

16

(1974). Here, Frank and Nathan did not expressly plead reformation of the Family Settlement Agreement because of a mutual mistake as an affirmative defense in the answer or in a counterclaim to Jean's quiet title action.

Frank and Nathan argued in their counterclaim that they entered into the Family Settlement Agreement and agreed to sign over the CDs to David because David agreed to leave the property to them upon his death. As stated above, in relevant part, Frank and Nathan argued: "But for the promise that they would get the Real Estate upon their father's death, Defendants would not have signed over their interests in the various CDs," and "But for the promise that they would get the Real [Es]tate upon their father's death, there was no consideration for [Frank and Nathan] to have signed over their interests in the various CDs."

In Frank and Nathan's motion for summary judgment, they argued—with support from the affidavits: "The Family Settlement Agreement was put together hurriedly and the provision that Defendants were to get a remainder interest in the Real Estate was inadvertently left out of the written document." Frank and Nathan argued: "The crux of the actual agreement between Defendants and their father, David L. Hauck, was that the Defendants were to receive a remainder interest in the Real Estate in exchange for conveying all of the cash they were otherwise entitled to receive." In conclusion, Frank and Nathan argued "that the Family Settlement Agreement be enforced . . . or in the alternative that the real estate described above be granted to the Trust to be transferred to the Defendants, Frank C. Hauck, II and Nathan Hauck."

Below, Jean did not address whether Frank and Nathan had shown mutual mistake during the summary judgment proceedings in entering the Family Settlement Agreement, and the district court did not review whether Frank and Nathan established mutual mistake by clear and convincing evidence. The district court refused to consider the

17

affidavits as parol evidence because Frank and Nathan had not established the Family Settlement Agreement ambiguously defined consideration.

In reviewing the record on appeal, Frank and Nathan's failure to clearly request reformation of the Family Settlement Agreement below and on appeal result in waiver of their claim of mutual mistake. "Reformation is an equitable remedy which provides the court with a tool to reform a contract to express the true intention of the parties. But it is an extraordinary remedy and should be exercised only with great caution." *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 502, 350 P.3d 1091 (2015). Frank and Nathan never clearly asked the district court to reform the Family Settlement Agreement to reflect the parties' true intent in their answer or counterclaim. On appeal, Frank and Nathan do not request a reformation of the Family Settlement Agreement to reflect the parties' true agreement but ask us to find summary judgment appropriate based on a mutual mistake. Without reformation, no written agreement reflects Frank and Nathan's alleged mutual promise with David, i.e., Frank and Nathan's CD transfers in exchange for David's promise to convey the real property to Frank and Nathan upon his death. As a result, we must deem the issue waived or abandoned due to Frank and Nathan's failure to adequately raise the reformation issue below and to brief the issue on appeal.

Affirmed.